IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**JOSE FRANCISCO ALVAREZ-ROMAN**,
    Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY**,
    Defendant.

Civil No. 19-1780 (BJM)

**OPINION AND ORDER**

Plaintiff Jose Francisco Alvarez-Roman ("Alvarez") seeks judicial review of the final administrative decision of the Social Security Administration Commissioner ("the Commissioner") denying his claim for Social Security Disability Insurance ("SSDI") benefits. Plaintiff asserts that this decision is not based on substantial evidence as required by 42 U.S.C. § 405(g) and that the Commissioner erred as a matter of law in determining that he is not entitled to SSDI. Docket No. ("Dkt.") 22. The Commissioner opposed. Dkt. 29. This case is before me by consent of the parties. Dkt. 3, 5. For the reasons set forth below, the Commissioner's decision is **VACATED** and **REMANDED**.

**STANDARD OF REVIEW**

After reviewing the pleadings and record transcript, the court has "the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner." 20 U.S.C. § 405(g). The court's review is limited to determining whether the Commissioner and his delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Sec'y of Health & Hum. Services*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C.§ 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters

entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Sec'y of Health & Hum. Services*, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence means "'more than a mere scintilla.' . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal citation omitted). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Hum. Services*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

The Commissioner employs a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; see *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Goodermote v. Sec'y of Health & Hum. Services*, 690 F.2d 5, 6-7 (1st Cir. 1982). At Step One, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At Step Two, the Commissioner determines whether the claimant has a medically severe impairment or combination

of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At Step Three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, he is conclusively presumed to be disabled. If not, the evaluation proceeds to Step Four, through which the ALJ assesses the claimant's Residual Functional Capacity ("RFC") and determines whether the impairments prevent the claimant from doing the work he has performed in the past.

An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1). If the claimant can perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e). If he cannot perform this work, the fifth and final Step asks whether the claimant can perform other work available in the national economy in view of his RFC, as well as age, education, and work experience. If the claimant cannot, then he is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At Steps One through Four, the claimant has the burden of proving he cannot return to his former employment because of the alleged disability. *Rodríguez v. Sec'y of Health & Hum. Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has done this, the Commissioner has the burden under Step Five to prove the existence of other jobs in the national economy the claimant can perform. *Ortiz v. Sec'y of Health & Hum. Services*, 890 F.2d 520, 524 (1st Cir. 1989). Additionally, to be eligible for disability benefits, the claimant must demonstrate that his disability existed prior to the expiration of his insured status, or his date last insured. *Cruz Rivera v. Sec'y of Health & Hum. Services*, 818 F.2d 96, 97 (1st Cir. 1986).

## BACKGROUND

Alvarez was born on April 2, 1979. Dkt. 17 (hereinafter "Tr.") at 34. He is unable to communicate in English. Alvarez previously worked as a security guard and a janitor. Tr. 34. He alleges a disability onset date of December 1, 2015 and would have been 36 years old at that time. Tr. 25.

Inspira Behavioral Care ("Inspira") treated Alvarez due to mental illness from February 21-26, 2015. Inspira reported that Alvarez had attempted suicide with a knife. Tr. 125, 131. Inspira conducted a Global Assessment Functionality (GAF) test on Alvarez and reported a finding of 35% functionality. Tr. 126. While under the care of Inspira, Alvarez complained of sadness; feelings of depression, anguish, anxiety, and hopelessness; past traumas; and auditory hallucinations. Tr. 133. Inspira admitted Alvarez again on August 3, 2017 because he was once more contemplating suicide. Tr. 256.

In a Social Security Administration function report dated April 5, 2016, Alvarez stated that he lived alone, could not perform social activities that he could in the past, would get in a bad mood regularly and would want to be alone, would sometimes perform his own personal hygiene and self-care but at other times neglect those things, and would do his own laundry but not necessarily other chores. Dkt. 77-78, 81. He also averred that he heard noises and voices regularly; that he did not know how to cook but would go out to eat sometimes; that he would travel via bicycle and public transportation, but he would not drive due to his medications; that he shopped for his own food and paid his own bills; and that he had difficulty remembering things, completing tasks, concentrating, and getting along with others. Tr. 78-81. However, Alvarez stated that he got along with authority figures well, was able to finish what he started, and needed no help or reminders to take his medicine. Tr. 78, 82.

On April 26, 2016, Alvarez was admitted to Pavia Hospital ("Pavia") due to mental illness. Tr. 185-86. Alvarez had again contemplated suicide with a knife. *Id*. Pavia doctors reported that Alvarez suffered from major depressive disorder. Tr. 183. They also noted that he had been experiencing changes in mood, that he was presenting as anxious, irritable, and illogical, and that he was not following instructions. Tr. 186. In May, Alvarez was discharged; the discharge report stated that Alvarez had responded favorably to treatment, that he was alert, calm, and cooperative, and that he was not presenting aggressive behavior. Tr. 193.

On May 25, 2016, Alvarez visited Ponce Health Science University Behavioral Clinic ("PHSU") for a medication refill. Tr. 506. PHSU noted that Alvarez had a diagnosis of major depressive disorder, recurrent and severe with psychotic symptoms. Tr. 509. PHSU provided Alvarez with Seroquel, Hydroxyzine Pamoate, Paxil, and Restoril. *Id*.

On June 8, 2016, Dr. Jomaira Ross-Casiano ("Dr. Ross"), a consultative expert, evaluated Alvarez. Dr. Ross's evaluation reflects that Alvarez suffered from anxious mood, short-term memory problems, attention problems, concentration problems, and other intellectual limitations. Tr. 645-49. In Dr. Ross's clinical impression and prognosis, she stated that "[Alvarez's] prognosis is poor, [and] he hasn't the ability to adapt, interact and manage social situations according to their [sic] physical and mental condition." Tr. 648. Dr. Ross also felt that Alvarez had mood and anxiety disorders with psychotic features. Tr. 649. However, Dr. Ross also noted that Alvarez cooperated with her well and that his evaluation "flowed" without any trouble. Tr. 648. At the evaluation, Alvarez also demonstrated an ability to recite the days of the week and the months of the year, as well as provide Dr. Ross with some information about his health and past events. Tr. 645-49.

On July 21, 2016, a non-examining medical consultant evaluated Alvarez in order to make a disability determination on behalf of the Social Security Administration; she determined that

Alvarez was not disabled. Tr. 281. In coming to this conclusion, the consultant noted in pertinent part that Alvarez's ability to interact appropriately with the general public and his ability to accept instructions and respond appropriately to criticism from supervisors were moderately limited. Tr. 278. The consultant found that Alvarez was depressed, but still able to perform a two-step simple command, persist at tasks for two-hour intervals, interact with others, and adjust to changes. Tr. 279. On October 28, 2016, another consultant came to the same determination and affirmed the prior consultant's opinion as written. Tr. 297-98.

On October 6, 2016, Alvarez filled out another Social Security Administration function report. Alvarez reported still living alone, taking his own medications, hearing voices, and not always performing self-care or hygiene-related activities. Tr. 98-99. He reported cleaning his own apartment and washing his own clothes, sometimes with help from his sister. Tr. 99-100. He also stated that he went out every day to medical appointments or to visit a place called the Nun's Home. Tr. 101. He no longer reported riding his bicycle, but did still note that he sometimes used public transportation and went out alone. *Id*. Alvarez also claimed to no longer be able to pay his own bills or handle financial matters on his own. *Id*. He reported having problems with memory, task completion, concentration, understanding, following instructions, and getting along with others; he also claimed that he was unable to follow spoken instructions. Tr. 103. Alvarez said that he got along extremely well with other individuals at the Nun's Home, that he spent time with them, and that they were like "family" to him. Tr. 102. He also claimed to still be able to get along well with authority figures. Tr. 104.

Finally, at Med Centro, a health clinic in Puerto Rico, on January 3, 2017, a physician found that Alvarez was "not apt for" working under pressure. Tr. 249.

This matter arises from Alvarez's application for SSDI benefits filed on April 14, 2016. Tr. 25. His claim was initially denied on July 22, 2016 and denied upon request for reconsideration on November 1, 2016. *Id*. Alvarez then requested a hearing before an ALJ, which took place on April 19, 2018. Tr. 24-25.

The ALJ determined at Step One that Alvarez meets the insured status requirements of the Social Security Act and has not engaged in substantial gainful activity since his alleged onset date. Tr. 27. At Step Two, the ALJ found that Alvarez has the following severe impairments: mood and anxiety disorders with psychotic features and a major depressive affective disorder, single episode, severe. *Id*. However, the ALJ found that other medical complaints that Alvarez cites, including back, neck, leg, and hand pain, do not constitute severe impairments. Tr. 27-28. Alvarez does not challenge this finding on appeal.

At Step Three, the ALJ concluded that Alvarez's impairments do not equal or meet the severity of any medical listing in the regulations' Appendix 1. Tr. 28. The ALJ relied heavily upon "paragraph B" and "paragraph C" criteria, which claimants have to satisfy in order to meet the criteria of listings 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders), in reaching this conclusion. *See* Tr. 28-30; 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

At Step Four, the ALJ found that Alvarez has the residual functional capacity to perform a full range of work at all exertional levels but with non-exertional limitations. Tr. 30. The ALJ stated that Alvarez retains the capacity to use his judgment to understand, remember and carry out short, simple and repetitive instructions and tasks. *Id*. The ALJ also found that Alvarez can frequently respond appropriately to supervision, coworkers, usual work situations, and changes in

a routine work setting. *Id*. However, the ALJ stated that Alvarez can only perform tasks that never involve dealing with the public. *Id*.

At Step Five, the ALJ found that Alvarez cannot perform his past relevant work, but that he would be able to perform jobs that exist in significant numbers in the national economy, such as dishwasher, dryer attendant and cleaner. Tr. 33-35. In support of this point, the ALJ stated that a Vocational Expert ("VE") has determined that an individual with Alvarez's RFC would be able to perform those jobs. Tr. 35. The ALJ therefore concluded that Alvarez is not disabled under the Social Security Act.

Alvarez requested review of the ALJ decision on May 15, 2018, which was denied by the Appeals Council on June 22, 2019, rendering the ALJ's decision the final decision of the Commissioner subject to judicial review. Tr. 1. The present action followed.

## DISCUSSION

### A. Claim One

Alvarez first claims that the ALJ has not addressed evidence properly because at Step Three of the evaluation process, the ALJ analyzes only paragraphs B and C of three-part tests for Appendix 1's medical listings 12.04 (Depressive, bipolar and related disorders) and 12.06 (Anxiety and obsessive-compulsive disorders), ignoring paragraph A of each. However, as the Commissioner argues, the ALJ implicitly gives Alvarez the benefit of the doubt, assuming that Alvarez has satisfied paragraph A of each test. *See* Tr. 28-30. The fact that the ALJ does not consider paragraph A of each test operates in Alvarez's favor, and any error in this regard is therefore harmless. *See, e.g.*, *Davis B. v. Berryhill*, 2019 WL 495580, at *3 (D.Me., 2019) (explaining that when a plaintiff's impairments do not meet the criteria of paragraphs B and C when considering various listings, "[w]ith respect to paragraph A . . . the error of failing to consider

it is harmless" because the error is in favor of the plaintiff). Alvarez has failed to show that the ALJ's method of analysis worked against him, so his claim that the ALJ does not address the evidence properly therefore fails.

### B. Claim Two

Next, Alvarez claims that the ALJ overlooks medical listing 12.06, which deals with anxiety and obsessive-compulsive disorders, without legal rationale or explanation. This is plainly incorrect, as the ALJ provides extensive analysis of what is known as "paragraph B" and "paragraph C" criteria; listing 12.06 is satisfied by the combination of the presence of paragraph A criteria, which, as discussed above, the ALJ has ignored to Alvarez's benefit, and the presence of either paragraph B or paragraph C criteria. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Notably, Alvarez does not claim that the ALJ overlooks listing 12.04, which relies upon the same analysis. *See id*. As a result, Alvarez's claim that the ALJ "overlooks" 12.06 without legal rationale or explanation fails.

Assuming arguendo that Alvarez's actual claim is instead that the ALJ's analysis of paragraphs B and C is flawed, the claim still fails; however, the point requires more careful consideration and a fuller exploration of the paragraph B and C criteria. Paragraph B criteria are the extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: the ability to 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself. *Id*. An extreme limitation is one that does not allow an individual to function in the relevant area independently, appropriately, effectively, and on a sustained basis; a marked limitation is one that seriously limits an individual's ability to function in the same ways; moderate limitations are ones where an individual's functioning in those areas is only fair. *Id*. Paragraph C criteria encompass a mental

disorder that must be "serious and persistent"; that is, the affected individual has a medically documented history of the existence of the disorder over a period of at least 2 years and there is evidence of both: 1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the individual's mental disorder; and 2) marginal adjustment, that is, the individual has minimal capacity to adapt to changes in their environment or to demands that are not already part of their daily life. *Id*.

The ALJ exclusively references paragraph B and paragraph C criteria in concluding that Alvarez does not have an impairment that equals or exceeds the severity of conditions under both 12.04 and 12.06. Tr. 28-30. The ALJ concludes that the paragraph B criteria have not been satisfied in part because Alvarez has only moderate limitations in his ability to understand, remember, or apply information; his ability to interact with others; and his ability to concentrate, persist, or maintain pace. Tr. 29. The ALJ further claims that Alvarez has only mild limitations in his ability to adapt or manage himself. *Id*.

The ALJ provides substantial support for his findings regarding paragraph B via reference to the record. First, the ALJ shows that while Alvarez displayed impaired memory and attention during an evaluation by Dr. Ross, in the same evaluation, he demonstrated that he retained his ability to recite the days of the week and the months of the year; furthermore, the record shows that he can still perform certain daily functions that required some ability to remember and understand, he is able to provide information about his health and past work history, and he can largely comply with instructions from healthcare providers and self-medicate appropriately. *Id*.; *see, e.g.*, Tr. 76-83. The ALJ therefore properly concludes that Alvarez has only moderate limitations in his ability to understand, remember, or apply information.

Second, the ALJ explains that although Alvarez claimed to have difficulty engaging in social activities and getting along with others, the record shows that he can take public transportation and deal appropriately with authority; additionally, the medical evidence showed that although Alvarez could sometimes seem irritable, others often thought of him as pleasant and cooperative and he had good interactions with others. *Id.*; *see, e.g.*, Tr. 79, 82, 100-02, 193, 645-46. The ALJ therefore properly concludes that Alvarez's ability to interact with others is only moderately limited.

Third, the ALJ correctly notes that even though Alvarez claimed to have a hard time focusing and avoiding distractions, medical evidence from Dr. Ross showed that at their appointment, he was adequately oriented and his thought process was logical and coherent; moreover, he was able to ride his bicycle, read, watch TV, and handle his own home medical care. *Id.*; *see, e.g.*, Tr. 79, 82, 646. The ALJ's conclusion that Alvarez's ability to concentrate, persist, or maintain pace is only moderately limited is therefore supported.

Fourth, although Alvarez noted that he sometimes has difficulty managing his mood, the ALJ cites evidence that he could generally adapt and manage himself, including evidence that he at least typically had appropriate hygiene, no problem getting along with providers and staff, and few problems with temper control. *Id.*; *see, e.g.*, Tr. 82, 100-02, 193, 645. The ALJ properly concludes that Alvarez has only mild limitations in his ability to adapt or manage himself.

The evidence that the ALJ cites to provides substantial support for finding that Alvarez's functioning in each paragraph B area is at least fair. Under the ALJ's analysis, therefore, Alvarez does not meet the paragraph B requirement that he have extreme limitation of one or marked limitation of two of these areas. The court must affirm the ALJ's opinion even if the record

arguably could justify a different conclusion so long as it is supported by substantial evidence. *Rodríguez Pagán*, 819 F.2d at 3.

The ALJ's evaluation of paragraph C is admittedly much more cursory, but elsewhere in his determination, the ALJ cites substantial evidence supporting his determination that the paragraph C criteria were not satisfied. In evaluating paragraph C, the ALJ notes that the evidence does not show a medically documented history of a disorder of at least two years' duration causing more than minimal limitation of ability to do basic work activities. Tr. 30. Elsewhere, the ALJ determines that Alvarez's ability to tolerate and respond appropriately to supervision, interact with coworkers, and respond to changes and work situations would be reduced, but adequate to handle ordinary levels of supervision in the customary work setting, sustain frequent contact with supervisors and coworkers, and frequently respond appropriately to work situations and changes. Tr. 34. If true, this would mean that Alvarez has more than minimal capacity to adapt to changes in his environment or demands that are not already a part of his daily life; under paragraph C, he would have to have minimal capacity or less to adapt to such changes.

The ALJ justifies his position that Alvarez possesses the ability to frequently respond appropriately to work situations and changes via reference to the record; these references lead to substantial support for the conclusion that Alvarez has not satisfied the paragraph C criteria. The ALJ acknowledges the difficulties that Alvarez faces, but claims that "the record as a whole suggests that the claimant would be capable to tolerate [sic] changes and some level of stress given that the claimant lives alone, performs most of the household chores independently, attends to his appointments alone, and goes out alone." Tr. 33. The ALJ's claim is indeed supported by evidence in the record. *See, e.g.*, Tr. 76, 79, 99-101. The Social Security Administration will consider that an individual has achieved only marginal adjustment, or the minimal capacity to adapt to changes

in their environment, when the evidence shows that changes or increased demands have led to exacerbation of the individual's symptoms and signs and to deterioration in their functioning. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The example that the Administration provides is of an individual who has become unable to function outside of his home or a more restrictive setting without substantial psychosocial supports. *Id.* The ALJ cites substantial evidence that Alvarez is at least somewhat able to function outside of his home without such supports. *See, e.g.*, Tr. 76, 79, 99-101. The evidence that the ALJ cites thereby provides substantial support for his finding that Alvarez has more than minimal capacity to tolerate change, thereby failing to satisfy the paragraph C criteria, and the ALJ's analysis does not ignore contrasting evidence. Again, the court must affirm the ALJ's opinion even if the record arguably could justify a different conclusion so long as it is supported by substantial evidence. *Rodríguez Pagán*, 819 F.2d at 3.

Since the ALJ's conclusion that Alvarez does not have an impairment that meets the criteria established in paragraphs B and C is supported by substantial evidence, if Alvarez had claimed that the ALJ's analysis of paragraphs B and C was inadequate, then his claim would still fail.

**C.  Claim Three**

Alvarez makes a third contention in his pleading that is difficult to follow. He may or may not contend that the ALJ errs at Step Five when citing testimony from the VE in concluding that Alvarez could perform jobs that exist in significant numbers in the national economy. However, Alvarez does not clearly state this claim or develop an argument in its support; instead, he merely notes the VE's testimony, states that his own limitations are supported by evaluations from his "treating doctors," and cites a specific evaluation conducted by Dr. Ross without saying how these evaluations would lead to the conclusion that the ALJ erred. *Id.*

Despite the lack of clarity surrounding Alvarez's contention, this court may consider the issue of whether the ALJ errs in reaching the conclusion that Alvarez can perform jobs existing in significant numbers. Alvarez's claim is insufficiently developed and unclear. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). However, "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Financial Services, Inc.*, 111 S.Ct. 1711, 1718, 500 U.S. 90, 99 (1991). *But see United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (stating that courts are essentially passive instruments of government that "do not, or should not, sally forth each day looking for wrongs to right. [They] wait for cases to come to [them], and when [cases arise, courts] normally decide only questions presented by the parties." (alterations in original) (quoting *United States* v. *Samuels*, 808 F. 2d 1298, 1301 (8th Cir. 1987)).

In this case, there is a disconnect between the ALJ's RFC determination and the VE's testimony. The VE testified that an individual who could respond appropriately to supervisors, coworkers, and usual work situations as well as changes in the work setting and who arguably otherwise matched Alvarez's description could perform the jobs of dishwasher, dryer attendant, and cleaner, all jobs that exist in significant numbers in the national economy. Tr. 59-60. However, when the ALJ asked the VE what would happen if the individual could instead "respond appropriately to supervisors, coworkers and usual work situations and changes in the work setting occasionally," the VE answered: "[n]o, respond appropriately to supervisors – the person has to respond appropriately all the time, not just occasionally." Tr. 60. It is not immediately clear whether the VE was testifying that the individual has to respond appropriately to the three separate

categories of his supervisors, his coworkers, and usual work situations all of the time or whether the individual only has to respond appropriately to his supervisors all of the time. However, even if the VE was only referring to the individual's supervisors, the ALJ has still erred. The ALJ found that Alvarez has an RFC with the nonexertional limitation that he can *frequently* respond appropriately to supervision, coworkers, usual work situations, and changes in a routine work setting. Tr. 30. To perform the jobs that the VE named, Alvarez would have to be able to respond appropriately to his supervisors (and potentially his coworkers, usual work situations, and changes in the work setting) *all* of the time. Whether or not the VE was only referring to Alvarez's supervisors, there is a disconnect between Alvarez's RFC and the VE's answer to the hypothetical that the ALJ cites in support of the notion that Alvarez can perform jobs that exist in significant numbers in the national economy.

Furthermore, the ALJ's error is not harmless. The record provides substantial support for the ALJ's finding that Alvarez can frequently but not always respond appropriately to authority. As the ALJ himself notes, Alvarez has a reduced ability to tolerate and respond appropriately to supervision. Tr. 34. The ALJ gives the opinions of State agency non-examining medical consultants regarding Alvarez's mental impairment substantial weight because he feels that the portion of their opinions regarding the claimant's mental functioning, which found he would be limited to unskilled work with certain additional restrictions, is in line with the medical record. Tr. 33. Notably, the consultants each found that Alvarez's ability to accept instructions and respond appropriately to criticism from supervisors was moderately limited. Tr. 278, 297. It is proper for the ALJ to give the consultants' opinions substantial weight, as they are indeed in line with Alvarez's medical record and appear to be generally sound.

The ALJ also gives Dr. Ross's opinion regarding the limitations on Alvarez's social functioning and ability to tolerate stress significant weight: Dr. Ross found that Alvarez's prognosis was poor and that he did not have the ability to adapt, interact and manage social situations according to his physical and mental condition. Tr. 32, 648. It is proper for the ALJ to give the opinion of Dr. Ross significant weight, as Dr. Ross was a treating physician for Alvarez and her opinion is fairly consistent with the rest of the record. It is not entirely clear how Dr. Ross's finding reflects upon Alvarez's ability to respond appropriately to supervision: Dr. Ross's testimony could mean either that Alvarez's physical and mental condition does not allow him to ever adapt, interact, or manage social situations, or instead could mean that when Alvarez's physical and mental condition is bad, it can make him unable to adapt, interact, or manage social situations. The latter interpretation appears likely to be correct, as Dr. Ross also noted that Alvarez was cooperative and that his evaluation "flowed" without any problems, suggesting that he could interact with her and manage their appointment to some extent. Tr. 648. Regardless, according to the VE, any erosion at all in Alvarez's ability to respond appropriately to others could jeopardize his ability to perform the jobs cited by the ALJ; as a result, either interpretation of Dr. Ross's opinion supports the notion that Alvarez would be unable to perform the jobs in question.

Other evidence supports the ALJ's finding that Alvarez can frequently but not always respond appropriately to authority as well. At Pavia Hospital, a physician noted that Alvarez did not follow instructions. Tr. 186. On January 3, 2017, a physician found that Alvarez was "not apt for" working under pressure. Tr. 249. On the other hand, the record shows that Alvarez has admitted to being able to get along well with authority figures and that he has largely managed to respond appropriately to the medical professionals and other authority figures that he has interacted with. *See, e.g.*, Tr. 82, 100, 104, 193, 645-46. In short, the record suggests that Alvarez gets along

well with authority figures, such as supervisors, in many cases, but nonetheless has moments where he is unable to do so because of his condition. Since the VE testified that the jobs the ALJ cites require a person to always be able to respond appropriately to authority, Alvarez does not appear to be able to perform those jobs.

At Step Five, the burden is on the Commissioner to show that there are other jobs existing in significant numbers in the national economy that Alvarez can perform. *Ortiz*, 890 F.2d at 524. However, the Commissioner has not shown this. Because the ALJ has properly found that Alvarez can frequently but not always respond appropriately to authority, and because the VE stated that a person would have to be able to respond appropriately to authority all the time in order to be able to perform the jobs that the VE has cited, it is unclear whether there are jobs existing in significant numbers that Alvarez could perform with his RFC. Since the Commissioner has not met the Step Five burden of proof and the resultant error was not harmless, but it may be possible that Alvarez could still perform other jobs not considered by the VE, this issue is worthy of remand.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **VACATED** and **REMANDED** for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 8th day of September, 2021.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge